IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ATLANTIC TRADING & MARKETING, INC. | § § § | |
| . Plaintiff | § § | C. A. NO. _____ |
| v. | § § | **JURY DEMAND** |
| AMSPEC, LLC a/k/a AMSEC SERVICES, INC. or AMSEC SERVICES, LLC | § § § § | |
| Defendant | | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Atlantic Trading & Marketing, Inc. (also called ATM"), Plaintiff in the above-entitled and numbered cause, complaining of Amspec, LLC, also known as Amspec Services, Inc., or Amspec Services, LLC, also called "Amspec" or "Defendant" herein, and in support would show the Court as follows:

### I.

1. Plaintiff, is a Texas corporation or similar entity, headquartered in Houston, which was the shipper or consignee of the cargo in question and brings this action on its own behalf, and on behalf of, and for, the interests of all parties who may be or become interested in the goods in question (low sulfur gas-oil or "gas-oil").

### II.

2. Defendant, Amspec, LLC, also known as Amspec Services, Inc. or Amspec Services, LLC ("Amspec"), was and now is a corporation or similar entity, headquartered in New Jersey, with offices in Texas and Louisiana, with the power to sue and be sued, which regularly does business in Texas, and/or the United States, as a petroleum commodity surveyor and inspector of goods, which is headquartered in Cranbury, New Jersey with a certificate of authority to do

business in Texas, and which maintains a designated agent on whom service may be made, and thus may be served, in care of its Texas Registered Agent: Corporation Service Co. (CSC) – Lawyers Service Company, 211 E. 7th Street, Suite 620 Austin, Texas 78701, or through its Vice President, Michelle Moffitt-Johnson, 37294 Clapp Rd., Pattison, TX 77423.

### III.
### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under Diversity Jurisdiction, 28 USC Sec. 1332, as the parties Plaintiff and Defendant are in complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

4. Venue is proper in the Southern District of Texas, because the service contract, between the parties, calls for jurisdiction in Houston, Harris County, Texas, State or Federal court.

### IV.
### GENERAL

5. Whenever Plaintiff alleges that Defendant did any act or thing, it is meant that Defendant's officers, agents, servants, employees or representatives, did such act or thing, and that at the time such act, or thing, was done with the full authorization or ratification of the Defendant, or done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

### V.
### FACTS AND FIRST CAUSES OF ACTION

6. On or before June 27, 2017 Amspec, acting as a petroleum commodity surveyor and inspector, entered into a contract with ATM for quality inspection and quality certification of

2

various ATM ship-tank quantities of petroleum goods, including Low sulfur gas-oil, delivered to Louisiana in an ocean-going vessel named the M/T Atina.

7. On or about June 27, 2017, Amspec inspected ATM's gas-oil in Garyville, LA, as it was being discharged from the M/T Atina to a Marathon Terminal. In accordance with the industry practice, conducted "foot-sample" sampling and testing of the gas-oil as it was entering the storage tanks of Marathon in Garyville, LA. "Foot-sample" testing was designed to identify the condition of a consignment of cargo and to confirm it is being transmitted in clean piping arrangements established for the transfer. Amspec was assigned the duty of confirming "good order and condition" before the lion's share of the l consignment of Low sulfur gas-oil (hereafter also "goods"), as it was being delivered from the M/T Atina's cargo tanks to the shore tanks at Marathon's Garyville, LA facility.

8. The "foot sampling" is designed to identify the condition and quality of the gas-oil as it was being delivered through the piping system established to connect the vessel's tanks and manifold system to the Marathon piping system and shore-side tanks. During the "foot-sampling" procedure a small parcel of the larger quantity aboard ship) is committed to the testing of the piping system to identify any cleaning errors or other systematic contaminants which might have accumulated in the transmission system attached to the ship to orchestrate the delivery of goods ashore.

9. 'On June 27, 2017, Amspec reportedly accomplished the "foot sampling" for the ATM delivery of low sulfur gas oil to Marathon and 6,500 cubic meters of the goods were delivered t6o the shore tanks for testing. Amspec reported to ATM and its buyer, that the transmission system was clean and acceptable for the transmission of the entirety of the remaining goods. By its foot sample report, Amspec declared the foot-samples clean and free of contaminants as it

was being transmitted within the ship-to-shore transmission system. Subsequently, 60,548.77 cubic meters of gas-oil was delivered in reliance upon the "good order" report of Amspec at the point of reporting the foot sample results. However, that foot sample "clean delivery' declaration by Amspec was incorrectly reported, which resulted in the contaminated delivery of 60,548.77 cubic meters of gas-oil, when only the foot sample quantity of 6,500 cubic meters of product would have been contaminated had Amspec accurately reported their results.

10. Consequently, a contaminated quantity of 54,548.77 cubic meters of gas-oil was delivered ashore when only the foot-sample quantity of 6,500 cubic meters of product would have been delivered contaminated if the transmission system contamination had been properly identified by Amspec in accordance with the expected accuracy. ATM was entitled to rely upon the "holding out" of Amspec, who advertises themselves to \be competent and qualitied petroleum inspectors knowledgeable of the practices and standards of the petroleum industry involving ship discharges.

11. As a result of Amspec's violation of industry standard these goods, which were to be delivered in good order and condition to the Marathon refinery at Garyville, LA were delivered contaminated and rejected. These goods were to be delivered, at ATM's instruction, in the same quantity and in the same good order condition as they were received at Marathon damaged and contaminated.

12. Defendant, Amspec, acting as a petroleum commodity surveyor and inspector, undertook quality inspection and quality certification responsibilities under instruction of ATM. However, Amspec did not accurately report the quality the goods (in the first foot sample) in the actual condition as they were sampled by Amspec. The goods were delivered contaminated on June 27, 2015 as a recently of Amspec's negligent inspection and reporting. The contaminated delivery

of the goods was caused due to the negligence and breach of contract of Amspec. The monetary loss incurred by Plaintiff's as a result of the loss or delivery in poor quality of the goods in Amspec's inspection was $1,090,044.45, for which Plaintiff demands recovery from Defendant.

## VI.
## BREACH OF CONTRACT AND RELATED NEGLIGENCE

13. Defendant Amspec undertook duties as an entity which would:

    1. Provide a an accurate quality inspection certification of the foot samples and prior to the delivery of the goods inspected by them,

    2. Institute certain procedures and utilize certain equipment which would be designed to prevent delivery in poor quality,

    3. Employ knowledgeable and properly trained personnel and instruct its employees (or subcontractors) in the corr3ect procedures to prevent improper inspection and reporting.

    4. Prevent improper and inaccurate reports to Plaintiff (regarding the quality of the gas-oil being delivered from an ocean-going vessel named the M/T Adina) from being delivered in the contractual chain between the relying parties.

14. The goods were improperly and negligently inspected (inconsistent with contractual requirements) and inaccurate reports were generated and transmitted to the plaintiff for confirmation of quality. Damages were then incurred solely because of Amspec's improper reporting.

15. Amspec breached their contract with ATM, and was negligent in instruction of its own personnel, and the instruction of others whom they employed to assist Amspec in the inspection

and reporting. Amspec was also breached their contract with ATM, and was negligent in their quality inspection and certification, reporting, and/or of the condition and quality of the foot sample of Low sulfur gas-oil resulting in delivery in poor quality of the balance of the parcel.

16. Defendant Amspec breached their contract with ATM and was negligent as follows:

   1. For failing to take adequate precautions to prevent improper reporting of the quality of the goods being delivered from an ocean-going vessel named the M/T Atina

   2. For failure to utilize certain procedures which would be designed to prevent inaccurate and untimely reporting,

   3. For failing to employ adequate and properly trained personnel to prevent inaccurate and untimely reporting,

   4. For improperly instructing its employees in proper procedures and techniques which would prevent improper and untimely reporting,

   4. For entrustment of its inspection and reporting responsibilities to third parties which were were ill-equipped for, and/or were under-informed concerning delivery in poor quality prevention methods and equipment, and

   5. For negligent instruction of those they hired in breach of their contract with ATM.

17. These acts and/or omissions constituted a breach of the duties of care owed by Defendant, Amspec, acting as a petroleum commodity surveyor and inspectors, to Plaintiff, and/or proximately caused the in poor quality delivery of the Low sulfur gas-oil during the transit in question and the damages enumerated herein.

## VII.
## **CONTRACT BREACH**

18.     In the alternative, and without waiving the above causes of action, Defendant, acting as a petroleum commodity surveyor and inspector agreed to: 1) provide proper quality inspection and certification/reporting regarding Plaintiff's goods, 2) prevent improper or untimely reporting to Plaintiff, and/or 3) prevent any other potential activity which a petroleum commodity surveyor and inspector knows, or should have known, might permit improper testing and reporting of the quality of Plaintiff's goods (particularly at the foot sample stage).

19.     Defendant is also liable for improper and unprofessional instruction of its employees, inconsistent with the standard of care in the petroleum inspection industry, and/or improper entrustment of the inspection and reporting of goods to third-parties, to whom they may have entrusted control over Plaintiff's gas-oil discharge from the ocean-going vessel named the M/T Atina.  Defendants failed to properly report the quality of the goods in the same quality as were inspected.  Defendant thus breached their contract(s), their inspectors' contract(s), and/or their duties as petroleum commodity surveyor and inspectors, and have violated their duties and obligations as inspectors and reporting entities for those goods entrusted to them, which breach(es) proximately caused the Low sulfur gas-oil to be contaminated and damaged as asserted wherein.

## VIII.
## **VIOLATION OF DUTY UNDER STANDARD OF CARE**

20.     Defendant Amspec, acting as a petroleum commodity surveyor and inspector or  had a duty to: 1) provide accurate quality inspection and certification of Plaintiff's inspected goods, 2)

prevent improper reporting of the qualities of goods to Plaintiff 3) utilize procedures which should be designed to prevent improper or untimely reporting, 4) employ properly trained personnel and properly instruct its employees in procedures to prevent improper testing and/or reporting, and/or 5) prevent any other potential activity which a petroleum commodity surveyor and inspector knows, or should know, might permit improper reporting to Plaintiff the quality of its goods.

21. As a petroleum commodity surveyor and inspector, Amspec failed to exercise the requisite care in inspection of the goods, and the reporting of the results of their inspections, failed to properly instruct others, and/or failed to accurately and timely report their inspection results from their quality inspection and certification. Defendant thus breached their duties as a petroleum commodity surveyor and inspector, which breach proximately caused the contamination of, and damage to, the goods in question, which would not have otherwise occurred.

## IX.
## AD DAMNUM CLAUSE AND CLAIM FOR ATTORNEY'S FEES

22. As a direct result of the activities above, Plaintiff suffered losses in the amount of $1,090,044.45, as nearly as same can now be estimated. Plaintiff retained the undersigned attorneys to present their claims to Defendant, and their claims have been presented to Defendant. However, the claims have not been paid, although duly demanded. Therefore, pursuant to Chapter 38 of the Tex. Civ. Prac. & Rem. Code Ann., and the pertinent contract between ATM and Amspec, Plaintiff further seeks reasonable attorney's fees in the amount of $300,000.00. Plaintiff further seeks all reasonable attorney's fees incurred in any future appeals.